UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAMELA BOONE and RAY MARRERO, for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE SOLID WOOD CABINET COMPANY, LLC,<br><br>Defendant. | Civ. No. 17-4323 (KM) (JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiffs, Pamela Boone and Ray Marrero, sue for overtime pay they claim they were owed by their former employer, defendant The Solid Wood Cabinet Company, LLC ("Solid Wood"). Solid Wood has moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). Solid Wood claims that Plaintiffs have not sufficiently pled a claim for relief and that, even if they have, the company falls within an exception to the FLSA that exempts "retail establishments" from having to provide overtime pay to sales representatives. Solid Wood also asserts that Mr. Marrero's claims under the New Jersey Wage and Hour Law fall outside the statute of limitations. For the reasons stated in this opinion, I will deny Solid Wood's motion except as to Mr. Marrero's overtime compensation claims under the New Jersey Wage and Hour Law, which are dismissed as untimely.

1

I. **Summary of Facts**[1]

Both Ms. Boone and Mr. Marrero are former employees of Solid Wood.[2] Solid Wood is a Pennsylvania-based, factory-direct retail company that manufactures and sells kitchen cabinets and bathroom vanities. It has four showroom locations in New Jersey. (Cplt. ¶ 11.)

From January 2013 to July 2016, Ms. Boone worked at Solid Wood's locations in Woodbridge and Paramus, New Jersey, as a kitchen designer and salesperson. (Id. ¶ 9.) Mr. Marrero was a kitchen designer and salesperson from July 2014 to January 2015 at the Woodbridge location only. (Id. ¶ 10.) The plaintiffs' primary duties were to design and sell kitchen cabinets and bathroom vanities to Solid Wood's customers. (Id. ¶ 13.) The positions were not managerial; Boone and Marrero were not empowered to hire or fire any worker, and their duties did not require any advanced knowledge, or any invention or originality in a recognized field of artistic or creative endeavor. (See id. ¶¶ 22–29.)

Ms. Boone alleges that she "typically" worked five to six days, totaling approximately 45–55 hours, per week. (Id. ¶ 9.) Mr. Marrero alleges that he

---

[1] Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| Cplt. = | Complaint (ECF no. 1) |
| Ans. = | Answer (ECF no. 16) |
| Def. Br. = | Brief in Support of Defendant's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (ECF no. 20) |
| Pl. Opp. = | Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (ECF no. 23) |
| Def. Reply = | Reply Brief in Support of Defendant's Motion for Judgment on the Pleading Pursuant to Rule 12(c) (ECF no. 11) |

[2] The complaint states that it is a putative class action and claims to represent "the putative collective and class members . . . who worked for Solid Wood as kitchen designers, salespersons, or other similarly-titled positions during the statutory period." (Cplt. ¶ 12.) No motion for class certification has yet been filed.

2

worked six days, totaling approximately 50–60 hours, per week. (*Id.* ¶ 10.) Both were paid a fixed weekly rate of $600 (referred to as a "non-recoverable weekly draw" by Solid Wood). (*Id.* ¶¶ 9–10; Def. Br. at 3.)

Plaintiffs claim that Solid Wood classified them as "exempt" employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.* (Cplt. ¶ 17.) That exempt classification would mean that, as commission-based salespersons, they were not entitled to any overtime premium wages. (*See id.*) They argue that they should not have been classified as exempt. They claim that Solid Wood knew that they worked between 45–60 hours per week and should have paid them overtime wages. (*See id.* ¶¶ 20–21.) They allege that they were entitled to be paid one and one-half times the regular rate of pay for all hours worked in excess of 40 hours a week. (*Id.* ¶ 30.)

## II. Discussion

### a. Standard of Review

Solid Wood has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Fed. R. Civ. P. 12(h)(2) "provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 426, 428 (3d Cir. 1991)). Accordingly, when a Rule 12(c) motion asserts that the complaint fails to state a claim, the familiar Rule 12(b)(6) standard applies. *Id.* (making due allowance, of course, for any factual allegations that are admitted in the responsive pleading). Thus, the moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

I must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the nonmoving parties (in this instance, plaintiffs Boone and Marrero). *Phillips v. Cty. of Allegheny*, 51 F.3d

3

224, 231 (3d Cir. 2008). However, a plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). I am also allowed to consider "extraneous documents that are referred to in the complaint or documents on which the claims in the complaint are based" without converting this motion into one for summary judgment. *Morano v. BMW of N. Am., LLC*, 928 F. Supp.2d 826, 830 (D.N.J. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993)).

### b. Sufficiency Under Heightened Pleading Standard of FLSA

First, Solid Wood takes issue with the level of detail in Plaintiffs' complaint. It argues that Plaintiffs have not sufficiently pled a claim for relief for denial of overtime pay under the heightened pleading standards of an FLSA case. (*See* Def. Br. at 5–6.) Citing *David v. Abington Memorial Hospital*, 765 F.3d 236 (3d Cir. 2014), Solid Wood points out that the complaint contains general allegations, using the term "typically" when describing how often Plaintiffs worked in excess of the 40-hour threshold before being qualified to receive overtime pay. (*Id.*; *see, e.g.*, Cplt. ¶¶ 9–10; 37.)

Recognizing that "the level of detail necessary to plead a FLSA over time claim poses a . . . difficult question," the Court in *Abington Memorial* concluded that a plaintiff must, at least, allege forty hours of work in a given workweek as well as some uncompensated time in excess of the forty hours. 765 F.3d at 241–42 (adopting the "middle-ground approach" laid out in *Lundy v. Catholic Health Syst. of Long Island Inc.*, 711 F.3d 106 (3d Cir. 2013)). What drove the Court of Appeals to affirm the dismissal of the claims was that none of the

4

named plaintiffs "alleged a single workweek in which he or she worked at least forty hours *and* also worked uncompensated time in excess of forty hours." *Id.* at 242 (emphasis added). The Court noted, however, that this standard did not require plaintiffs to plead the exact dates and times they worked overtime. *Id.* at 243 ("For instance, a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice.").

While not detailing exact dates and times they worked over the 40-hour-per-week threshold, both Ms. Boone and Mr. Marrero have sufficiently alleged a FLSA claim. Mr. Marrero alleges that he "typically worked six days per week, for approximately 50–60 hours each week and was paid a fixed weekly rate of $600." (Cplt. ¶ 10.) Ms. Boone, likewise, alleges that she "worked five to six days per week, for approximately 45–55 hours per week and was paid a fixed weekly rate of $600." (*Id.* ¶ 9.) Within both of these allegations is a claim that each plaintiff worked at least 40 hours in at least one week while employed by Solid Wood, that they worked over 40 hours in that given week, and that they were paid under the statutory minimum of one and a half times the minimum wage for those excess hours. *Cf. Abington Mem'l*, 765 F.3d at 241 (explaining that one of the plaintiffs only asserted that she "typically" worked 37.5 hours per week but "occasionally" worked an additional 12.5-hour or "slightly longer" shift without actually claiming there was at least one work worked over 40 hours). That is a sufficiently specific allegation under the standard set out in *Abington Memorial*.

### c. Elements of the FLSA Retail Sales Exception

FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract. It requires, generally, that employees must be paid one and one-half times the regular wage for hours worked in excess of forty hours per week. *Abington Mem'l*, 765 F.3d at 241. However, FLSA also provides an exemption from its overtime pay requirements

for certain employees or service establishments. 28 U.S.C. § 207(i). The pertinent section provides as follows:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such an employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents the commissions on good or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee. *Id.* (entitled "Employment by retail or service establishment"). *Id.*

Courts are to construe this exemption narrowly, *i.e.*, in favor of the employee and against the employer, *Davis v. Mountaire Farms, Inc.*, 453 F.3d 554, 556 (3d Cir. 2006), and the employer bears the burden of demonstrating its eligibility for this exemption. *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010).

I will separately discuss each of the exemption's essential elements.

### i. Retail Establishment

Solid Wood claims that it is "unquestionably a retail establishment" and thus meets the first element for exemption from the overtime pay requirements of FLSA under § 207(i). (Def. Br. at 8; *see* Ans. ¶ 11 ("Solid Wood further admits that it is a retail company that sells kitchen cabinets and bathroom vanities directly to consumers.").) Plaintiffs deny that the exemption applies to Solid Wood's business. (Cplt. ¶ 56.) [3]

The statute provides no definition for the term "retail establishment." *Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 369 (7th Cir. 2015) ("But

---

[3] Paragraph 11 of Plaintiff's Complaint states that "Solid Wood is a factory direct, *retail* company that manufactures and sells kitchen cabinets and bathroom vanities." (Cplt. ¶ 11 (emphasis added).) I take this as a general description of the type of selling Solid Wood is engaged in, not a concession of the applicability of the FLSA exemption..

6

to prevail [under § 207(i), defendant] must show not only that its employees are paid by commission, but also that the company is a retail or service establishment, terms not defined in the statute."); *Hakins v. VIP Wireless LLC 300*, No. 09-754, 2010 WL 3938255, at *3 (W.D. Pa. Oct. 5, 2010) ("[T]here is no current definition, *per se*, of the phrase "retail or service establishment" in the statute . . . ."); *see also Nutrisystem*, 620 F.3d at 277 (noting that the parties agreed that the defendant, an online pre-packaged weight loss and weight management product purveyor, qualified as a retail establishment under § 207(i)).

The parties put forward competing interpretations of the term "retail establishment."

Solid Wood points to *Alvarado*, in which the U.S. Court of Appeals for the Seventh Circuit concluded that a window-cleaning services company met the "retail or service establishment" requirement of § 207(i). 782 F.3d at 369 ("As a service establishment CCS meets the 'retail *or* service establishment" requirement in section 207(i). If that weren't enough (though it is), CCS is probably best described as a retail service establishment. It sells its window-cleaning services to building owners and managers; they are the ultimate customers; they do not resell the window cleaning, and therefore CCS is not a wholesaler."). In Solid Wood's reading, Judge Posner's opinion in *Alvarado* construes the purpose of § 207(i) as exempting "'establishments' that sell to the ultimate customers." (Def. Br. at 8.)

Plaintiffs, on the other hand, cite the Department of Labor's interpretative guidance as to the meaning of "retail establishment." (Def. Br. at 7.) Those guidelines define a "retail or service establishment" as one that "sells goods or services to the general public" at "the very end of the stream of distribution" but "does not take part in the manufacturing process." 29 C.F.R. § 779.318(a).[4] Plaintiffs interpret the latter clause as essential; to be a retail or

---

[4] The guideline, however, notes that this differs from its construction of the term in another section. *Compare* 29 C.F.R. § 779.318(a), *with* 29 C.F.R. § 779.346. In that section, a "retail establishment' is an establishment where "75 percent of its annual

7

service establishment, the business must play "no part in the manufacturing process." (Pl. Opp. at 7 (citing *Haskins*, 2010 WL 3938255, at *3 (quoting 29 C.F.R. § 779.318).) Thus, they say, Solid Wood's role in manufacturing kitchen cabinets and bathroom vanities "conclusively" determines that it is not a "retail establishment" under § 207(i), or at the very least presents a question of fact that cannot be resolved on this motion. (*See id.*)

Both interpretations of "retail establishment" involve fact-bound analyses of the nature of Solid Wood's business of selling kitchen cabinets and bathroom vanities. *See Alvarado*, 782 F.3d at 369 (looking at, among other things, who defendant sold its window cleaning services to, whether these services were resold, how the services were sold, and whether it could be considered to be "wholesaling"); *Haskins*, 2010 WL 3938255, at *4–5 (looking at, among other things, whether defendant manufactured cell phones and related paraphernalia, devised service plans, provide telecommunications services, and whether customers bought their products with the intent of reselling them). There is not enough contained within the pleadings and the documents relied on by them to show that Solid Wood clearly falls within the retail exception to § 207(i) under either definition. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) ("A motion for judgment on the pleadings should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'"). Solid Wood provides, in its Answer, a declaration by its CEO, Stephen Newton, and a copy of Solid Wood's "Commission Policy—Showroom Sales," detailing the responsibilities of its sales

---

dollar volume of sales of goods must not be for resale, 75 percent of its annual dollar volume of sales of goods must be recognized as retail in its industry, over 50 percent of its annual dollar volume of sales of goods must be made within the State in which the establishment is located, and its annual dollar volume of sales must be under $250,000." 29 C.F.R. § 779.346. Additionally, the establishment must be (a) recognized as a retail establishment in the particular industry, (b) the goods made or processed by the establishment must be made or processed at the establishment which sells the goods, and (c) more than 85% of the annual dollar volume of sales of the goods which it makes or processes must be made within the state in which the establishment is located. *Id.*

representatives. (*See* Ans., Ex. A, Ex. 2.) It argues that these documents definitively show that Solid Wood is a "retail establishment." (Def. Br. at 9–10.) However, neither of these documents are integral to the complaint or explicitly relied thereon. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered "without converting the motion [to dismiss] into one for summary judgment."" (citations omitted)). Because there is a material dispute over the nature of Solid Wood's business, I cannot find that Solid Wood is a "retail establishment" under § 207(i).

### ii. One and One-Half Minimum Wage

§ 207(i) exempts an employer from the overtime requirements if, among other things, "the regular rate of pay of [its] employee is in excess of one and one-half times the minimum hourly rate applicable to him." 28 U.S.C. § 207(i). Neither party disputes that at the time relevant to the allegations in the complaint the federal minimum wage was $7.25 per hour, which would translate to a one-and-one-half rate of $10.28 per hour. (Def. Br. at 10; Pl. Opp. at 8.) What is in dispute, however, is whether Solid Wood compensated (or was required to compensate) Plaintiffs at that one-and-one-half rate for their sales work outside of the forty-hour work week. (*See* Def. Br. at 10; Pl. Opp. at 8.)

Both Plaintiffs received $600 a week from Solid Wood. (Cplt. ¶¶ 9–10; Ans. ¶¶ 9–10.) Plaintiffs call this pay "a fixed weekly rate," while Solid Wood calls it a "non-recoverable 'draw' against future commissions earned pursuant to a bona fide commission plan." (Cplt. ¶¶ 9–10; Ans. ¶¶ 9–10.) Solid Wood contends that Ms. Boone earned commissions that exceeded $600 per week while Mr. Marrero never worked more than 40 hours per week. (Ans. ¶¶ 19–21 (citing attached time records).)

On a motion for judgment on the pleadings, I am allowed to consider exhibits attached to the complaint, matters of public record, and undisputedly

authentic documents if the plaintiff's claims are based on those documents. *Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, 721 F. Supp.2d 307, 314 (D.N.J. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Here, however, it is the defendant who offers the time records as evidence that Plaintiffs were paid in accordance with the FLSA for the number of hours they worked. The Complaint alleges (albeit in skimpy fashion) that the time records do not accurately reflect the hours worked by Ms. Boone and Mr. Marrero. (Cplt. ¶¶ 71, 84.) The hours Plaintiffs worked at Solid Wood, then, are factually at issue.

Summary judgment, not a motion for judgment on the pleadings, seems the appropriate vehicle for this factual issue. *Inst. for Sci. Info. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) ("Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires 'the movant [to] clearly establish . . . that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"). Targeted discovery should permit the defendant to test these allegations and determine whether they are backed by any specific facts.

### iii. Bona Fide Commission Rate

Next, § 207(i) states that "more than half [the employee's] compensation for a representative period (not less than one month) represents the commissions on good or services" and requires that in order to be a commission the fee paid to the employee must be based on a "bona fide" commission rate. *Nutrisystem*, 620 F.3d at 278. The statute does not define the term "commission." *Id.* (noting that the term "bona fide commission rate" was imprecise and capable of ambiguity and that the term did not have a plain language meaning). The Third Circuit, after consulting Department of Labor interpretations and other Circuits' construction of the term, concluded that "when flat-rate payments made to an employee based on that employee's sales are proportionally related to the charges passed on to the consumer" that rate

could be considered a "bona fide commission rate." *Id.* at 283 (declining to adopt a test strictly based on a percentage cost to the consumer).

To its Answer Solid Wood attached a document entitled "Commission Policy—Showroom Sales," which states that its kitchen designers/salespeople earned a 9% commission on a net sale (unless the transaction fell into a specified exception whereby they would earn a lower percentage of a net sale). (Ans. ¶ 9, ex. A, ex. 2 § 4.) This, it says, represents a "bona fide commission plan." Plaintiffs and Solid Wood dispute the accuracy of the time records and whether the pay stated in those records actually reflects a "bona fide" commission rate. (Cplt. ¶¶ 21 n.2, 71, 84; Ans. ¶¶ 9–10, 71, 84.) The issue is still too fact-bound to be resolved on a motion directed to the pleadings.

### d. NJWHL

Generally, the NJWHL requires employers to pay employees one and one-half times their regular hourly wage for each hour worked in excess of forty hours a week. *Anderson v. Phoenix Health Care, Inc.*, No. L-5282-08, 2011 WL 5554518, at *1 (Sup. Ct. App. Div. Nov. 16, 2011).

The NJWHL contains its own two-year statute of limitations:

> No claim for unpaid minimum wages, *unpaid overtime compensation*, or other damages under this act shall be valid with respect to any such claim which has arisen than 2 years prior to the commencement of an action for the recovery thereof. N.J.S.A. 24:11-56a25.1 (emphasis added).

N.J.S.A. 24:11-56a25.1 (emphasis added). *Compare* 29 U.S.C. § 255 (placing a 2-year limitation on FLSA actions but a 3-year limitation where the violation was willful). Mr. Marrero ended his employment with Solid Wood in January 2015 but did not commence this action until June 2017. (*See* Cplt. ¶ 10.) Plaintiffs do not suggest any grounds for application of tolling or the discovery rule. Because his entire period of employment falls outside the statute of limitations period, Mr. Marrero is barred from pursuing his NJWHL overtime claims against Solid Wood.

11

Ms. Boone's employment, however, extended into the limitations period. (Cplt. ¶ 9.) As to her, and in the alternative as to Mr. Marrero, I consider Solid Wood's substantive arguments for dismissal of the NJWHL claims.

Excepted from the NJWHL overtime requirements are employees employed in bona fide executive, administrative, or professional capacities. *Id.* (citing N.J.S.A. 34:11–56a4). New Jersey regulations have defined "administrative" as including employees "whose primary duty consists of sales activity and who receives at least 50 percent of his or her total compensation from commissions and a total compensation of not less than $400.00 per week." N.J.A.C. 2:56-7.2(c).

Solid Wood argues that Plaintiffs fall within this exception in the NJWHL. In support, it offers certain company policy and time records.[5] Plaintiffs, as they did in connection with the FLSA exemption, contend that their compensation was not part of a "bona fide" commission plan but possibly part of "a pay plan designed to avoid paying overtime wages." (Pl. Opp. at 12.) Here, as there, questions of fact stand in the way of a determination as to whether the positions could be considered exempt sales positions under the NJWHL. *See also Thompson v. Real Estate Mortg. Network, Inc.*, 106 F. Supp. 3d 486, 490 (D.N.J. 2015) (noting that NJWHL is drafted in parallel with the FLSA).

I will therefore deny Solid Wood's motion as to the NJWHL claims.

## Conclusion

For the foregoing reasons, Solid Wood's motion for judgment on the pleadings is granted as to Mr. Marrero's NJWHL overtime compensation claims but denied as to all other claims. An appropriate order follows.

Dated: May 31, 2018

*Kevin McNulty*
**Kevin McNulty**
**United States District Judge**

---

[5] These documents are submitted as exhibits to a declaration by Stephen Newton, CEO of Solid Wood. (*See* Def. Br. at 13–14 (citing attached company policy and time records).) They are not properly considered on a Rule 12(c) motion.