**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAMELA BOONE and RAY MARRERO, for themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>THE SOLID WOOD CABINET COMPANY, LLC,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)     Case No. 2:17-cv-04323-KM-JBC<br>)<br>)<br>)<br>)<br>) |

**JOINT MOTION AND INCORPORATED MEMORANDUM OF LAW FOR
APPROVAL OF THE PARTIES' FLSA SETTLEMENT**

Pamela Boone and Ray Marrero ("Plaintiffs") and The Solid Wood Cabinet Company, LLC ("Defendant") (collectively, the "Parties"), through their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The Parties have negotiated a settlement to resolve this *bona fide* FLSA dispute after several years of motion practice, the exchange of substantial discovery to inform the damages calculations and the Parties' respective positions regarding liability and entitlement to damages, extensive arm's-length negotiations conducted by counsel well versed in wage and hour litigation, and a mediation overseen by an experienced wage and hour mediator.

The Parties submit that the terms of their proposed Settlement Agreement and Release ("Settlement Agreement") are fair, reasonable, and adequate, particularly in light of the existence of disputed issues of fact and law with respect to liability and damages, uncertainty as to whether

Plaintiffs would obtain a judgment in their favor, along with the risks of trial and possible appeals. *See generally* Settlement Agreement (Exhibit 1).[1]

## I.    RELEVANT BACKGROUND

### A.    Procedural History

On June 14, 2017, Plaintiffs filed a putative collective action Complaint against Defendant alleging violation of the FLSA. *See* Complaint [Dkt. No. 1].[2] Plaintiffs alleged that they and other similarly-situated showroom personnel (referred to herein as "Designers") were systematically wrongfully classified as exempt under the "retail or service establishment" exemption and were subjected to common policies and procedures that deprived them of overtime premium wages for the work they performed in excess of forty (40) hours per week as required under the FLSA. *See* Complaint [Dkt. No. 1]. On August 31, 2017, Defendant filed an Answer. *See* Answer [Dkt. No. 16]. On October 18, 2017, Defendant filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c). *See* Motion [Dkt. No. 20]. On May 31, 2018, the Court denied Defendant's Rule 12(c) Motion except as to Plaintiff Marrero's NJWHL claims, which were dismissed as untimely. *See* Order [Dkt. No. 28]. Thereafter, the Parties agreed that they would explore resolution of these claims through mediation. On January 3, 2019, the Parties submitted a letter to the Court advising of their agreement to participate in a private mediation and requested the tolling of discovery deadlines and the statute of limitations in an effort to mitigate fees and costs prior to the mediation and to focus their efforts on negotiating a potential settlement. On January 4, 2019, the Court granted the Parties' tolling requests. *See* Order [Dkt. No. 36].

---

[1] Under separate file, Plaintiffs will submit a Supplemental Memorandum in Support of Unopposed Attorneys' Fees and Costs.

[2] Plaintiffs also alleged violations under the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56A *et seq.* and N.J.A.C. 12:56-5.1 *et seq.* ("NJWHL").

On May 15, 2019, the Parties participated in a full-day in-person mediation before an experienced mediator, Pete Winebrake, Esq. in Philadelphia, Pennsylvania. *See* Declaration of David J. Cohen at ¶ 12 (Exhibit 2). This negotiation was informed by Defendant's voluminous production of time and pay records for all of Solid Wood's employees during the relevant period of time and the Parties' thorough investigation of their claims, including arguments for and against Defendant's liability and Plaintiffs' entitlement to damages. *Id.* at ¶ 11. Although the mediation was unsuccessful, the Parties, along with the continued assistance of the mediator, continued their settlement discussions and ultimately reached an agreement in principle to settle claims on an individual basis for the two named Plaintiffs only. *Id.* at ¶ 12. Plaintiffs' counsel, with the express approval of the named Plaintiffs, diligently negotiated for settlement sums of $5,000 for each Plaintiff. Plaintiffs' contend this number reflects a fair and reasonable compromise struck between the Parties considering that Plaintiff Boone had sought compensation for roughly three months of unpaid overtime compensation, while Plaintiff Marrero sought compensation for approximately six months of unpaid overtime compensation.[3]

On or about August 20, 2019, the Parties submitted a stipulation of settlement letter to the Court, along with the Settlement Agreement for *in camera* review and approval. On September 27, 2019, the Court rejected the Parties' stipulation of settlement letter, citing in part the "lack of supporting documentation or explanation" to justify the terms and conditions of the Settlement Agreement. (Dkt. No. 45). The Parties attempted to resolve those concerns and intended to submit a joint motion for approval of the settlement; however, prior to doing so, Defendant became insolvent. Due to unforeseen economic and supply chain issues, Defendant ceased operations on

---

[3] It is also worth noting that since Plaintiff Marrero's claims accrued more than two years from the date the Complaint was filed, he would need to prove that Defendant willfully violated the FLSA in order to recover any damages. *See* 29 U.S.C. § 255(a).

January 17, 2020. The bank seized all assets pursuant to a secured loan agreement Defendant entered into on March 28, 2017. Despite limited assets to fund the settlement, the Parties spent several months discussing options for resolving this matter as provided by their Settlement Agreement. The Parties were successful in doing so and now seek the Court's approval of the Settlement Agreement.

### B.  Nature of Plaintiffs' Claims

Defendant was a factory direct, retail company that manufactured and sold kitchen cabinets and bathroom vanities before it abruptly ceased all business operations and closed its facilities in January, 2020.[4] Defendant owned and operated four showrooms in New Jersey (in Brick, Moorestown, Paramus, and Woodbridge) and seven showrooms in Pennsylvania (in Allentown, Harrisburg, Lancaster, Levittown, Plymouth Meeting, Springfield, and Warminster). Plaintiffs were Designers who worked for Defendant during the applicable statute of limitations period. Plaintiffs alleged that Designers' main job duties were to follow established, company-wide practices and procedures to design and sell kitchen cabinets and bathroom vanities for customers using Defendant's design software. *See* Complaint at ¶ 18 [Dkt. No. 1]. Designers also provided cost quotes to customers based on the designs they created, frequently visited competitors' stores for various reasons including gaining a competitive edge in the market, and occasionally purchased products for Defendant. *Id*.

Named Plaintiff Boone worked in various positions for Defendant in its Woodbridge and Paramus, NJ locations from January 2013 to July 2016. *Id.* at ¶ 9. Boone was employed as a Designer from approximately January 2013 until approximately April 2013. *Id.* at ¶ 9, fn. 1. From

---

[4]*https://www.woodworkingnetwork.com/news/woodworking-industry-news/employees-and-customers-blindsided-solid-wood-cabinetrys-sudden*.

approximately April 2013 until approximately May 2016, Boone was employed as a showroom manager. *Id*. Finally, from approximately May 2016 until approximately July 2016, Boone returned to her previous position and was employed as a Designer. *Id.* During her last three months as a Designer, Boone typically worked 45-55 hours per week over five or six days, and was paid a fixed weekly rate of $600.00 regardless of the actual time worked. *Id.* at ¶ 9.

Named Plaintiff Marrero worked as a Designer in Defendant's Woodbridge, NJ location from July 2014 to January 2015. *Id*. at ¶ 10. During the course of his six-month employment, Marrero typically worked 50-60 hours per week over six days and was paid a fixed weekly rate of $600.00 regardless of the actual time worked. *Id*.

Plaintiffs alleged that they worked between 45 and 60 hours per workweek. *Id*. at ¶ 19. However, Plaintiffs further alleged that Defendant failed to keep accurate, contemporaneous records of all hours worked. *Id,* at ¶¶ 71, 84. For example, Plaintiffs alleged Defendant encouraged and permitted them to work off-the-clock, doing such tasks as "measuring" (*i.e.,* going to customers' homes to actually measure the space to install cabinets), as well as visiting competitors' retail locations for various reasons (*e.g.,* to gain a "competitive edge" in the market). *See* Opp. Mot. at p. 9 (Dkt No. 23). Plaintiffs maintained that this conduct is attributable to Defendant because its own managers encouraged Plaintiffs to perform this off-the-clock work. *Id.* Accordingly, Plaintiffs alleged that Defendant violated the FLSA by improperly classifying them as exempt and depriving them of overtime premium wages owed for all hours worked over 40 in a workweek.

## C.  Legal Background

The FLSA prohibits an employer from requiring employees to work more than forty (40) hours in a workweek, unless such employee receives compensation for any hours worked over

forty (40) at a rate of not less than one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). There are narrow exceptions (*i.e.,* exemptions) to this general rule, the applicability of which are in dispute in this case. If an employer fails to comply with the FLSA, it is liable for unpaid overtime compensation plus liquidated damages. 29 U.S.C. § 216(b). Liquidated damages are intended to compensate employees for losses incurred because they did not receive payments when due and are thus compensatory, not punitive in nature. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

## II.    THE SETTLEMENT AGREEMENT

The Parties negotiated a maximum gross settlement amount payment of $66,750.00 to resolve any and all claims Named Plaintiffs asserted, or could have asserted, in this lawsuit, including claims for unpaid wages, liquidated damages, attorneys' fees, or litigation costs. *See generally* Exhibit 1. As outlined in the Settlement Agreement, the Parties propose to distribute this sum as follows:

- $5,000.00 as compensatory and liquidated damages to each Named Plaintiff ($10,000.00 total);

- $53,358.35 as an attorney's fee to Plaintiffs' counsel; and

- $3,391.65 as a litigation cost reimbursement to Plaintiffs' counsel.

*Id*.

Named Plaintiffs' damage payments represent a fair and reasonable result because of the uncertainty of determining whether Defendant violated the FLSA, questions about Plaintiffs' ability to prove the amount of time they actually worked each workweek, the effect of the statute of limitations on Plaintiffs' damage claims, and considerations associated with the risks, costs and delays of continued litigation. Furthermore, the Named Plaintiffs' payments represent a greater

sum than they could recover at trial.[5] For example, Named Plaintiff Boone only seeks damages for the last three months of her employment with Defendant when she returned to the position of Designer. During her last three months as a Designer, Boone estimated she typically worked 45-55 hours per week and was paid a fixed weekly rate of $600.00 regardless of the actual time worked. *See* Complaint at ¶ 9 [Dkt. No. 1]. Therefore, using Boone's maximum total of 55 hours of work each week for the last three months of her employment, she would be entitled to 15 overtime hours each week at a half-time rate of $5.45 for a total of $981.82 in unliquidated damages and $1,963.64 in liquidated damages.[6] Similarly, Named Plaintiff Marrero only seeks damages for six months of employment with Defendant in which he worked 50-60 hours per week and was paid a fixed weekly rate of $600.00. *Id*. at ¶ 10. Therefore, using Marrero's maximum total of 60 hours of work each week for his six months of employment, he would be entitled to 20 overtime hours each week at a half-time rate of $5.00 for a total of $2,400.00 in unliquidated damages and $4,800.00 in liquidated damages.[7]

---

[5] Under the FLSA, employers must include commissions earned in their regular rate calculations in every workweek their employees earn a commission and work over 40 hours. *See, e.g., Bowe v. Enviro Pro Basement Sys.*, 2015 WL 9308236 (D.N.J. Dec. 22, 2015). Under the FLSA, "[c]ommissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate [for computing overtime]." *Id*. at *5; 29 C.F.R. § 778.117. To obtain an employee's regular hourly rate for a particular workweek, weekly commissions are "added to the employee's other earning for that workweek […], and the total is divided by the total number of hours worked in the workweek." 29 C.F.R. § 778.118. The employee "must then be paid extra compensation at one-half of [that] rate for each hour worked in excess of the applicable maximum hours standard." *Id*.

[6] The following calculation was used: $600 [total gross pay per week] ÷ 55 [total estimated hours worked each week] ÷ 2 [half-time rate] x 15 [overtime hours worked each week] x 12 [total weeks] = $981.82.

[7] $600 [total gross pay per week] ÷ 60 [total estimated hours worked each week] ÷ 2 [half-time rate] x 20 [overtime hours worked each week] x 24 [total weeks] = $2,400.00.

In return for these payments, the Named Plaintiffs will provide Defendant with a release from:

> [A]ny and all actual or potential claims, demands, actions, causes or action or liabilities, whether known or unknown, in law or equity, whether statutory or common law, or otherwise related to Plaintiffs' wages and hours during his/her employment with Solid Wood or any agreement concerning wages or hours during such employment, which Plaintiffs ever had, now have, or could have, from the beginning of the world to the date of the respective Plaintiff's execution of this Settlement Agreement, including any and all wage and hour claims, any claims for unpaid wages or overtime pursuant to the FLSA or NJWHL, any claims for failure to pay off-the-clock work, and/or any claims that were or could have been asserted in the Lawsuit, including back pay, front pay, liquidated, compensatory, and punitive damages.

Exhibit 1 at ¶ 5.

## III.    THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

### A.  Legal Standard Governing Final Settlement Approval

Because the Third Circuit has not yet weighed in on the issue, courts in this Circuit adhere to the FLSA approval process set forth by the Eleventh Circuit in *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See Fritz v. Terminite, Inc.*, No. CV 19-15749 (SRC), 2020 WL 5015508, at *1 (D.N.J. Aug. 25, 2020). Applying this process, the Court must determine "that the compromise reached is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Cruz v. JMC Holdings, Ltd.,* 2019 WL 4745284, at *3 (D.N.J. Sept. 30, 2019). "A proposed settlement resolves a '*bona fide* dispute' when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute,' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Davis v. Essex County*, 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015). The court must be reassured that the settlement resolves a *bona fide* dispute over "factual issues" rather than "legal

issues such as the statute's coverage or applicability." *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012). Ultimately, "in determining whether a compromise is fair and reasonable, courts in this Circuit consider both: (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apartments LLC*, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015).

### B. The Parties' Settlement is Entitled to a Presumption of Fairness

In reviewing settlement agreements, the Third Circuit has "directed a district court to apply an initial presumption of fairness when reviewing a proposed settlement where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir.2004) (internal quotations omitted).

The Parties' settlement is entitled to a presumption of fairness. First, the Parties' Settlement Agreement is the result of arm's-length negotiations by experienced wage and hour counsel and an experienced mediator. Exhibit 2 at ¶¶ 5, 8-9, 12. The Parties' negotiations included consideration of the facts underlying Plaintiffs' claims and Defendant's defenses, the realities of Defendant's financial condition, and a thorough assessment of the strengths, weaknesses, and risks inherent to the Parties' respective positions – all of which demonstrate the arm's-length nature of the Parties' proposed settlement and the absence of collusion in their negotiations. *Id.* at ¶¶ 11, 17. Second, the Parties' settlement negotiations were informed by a thorough analysis of Defendant's time and pay data for all Designers who worked at Defendant's eleven showrooms throughout NJ and PA during the relevant period of time as well as data relating to Defendant's liability and

Plaintiffs' entitlement to damages. *Id*. This production permitted an assessment of the proper shape of the potential class and allowed for an in-depth analysis of the strengths, weaknesses and risks inherent to the Parties' respective positions. *Id*. Finally, the Named Plaintiffs approve of the settlement and have no objections to this settlement. *Id*. at ¶ 18. Accordingly, the Settlement Agreement must be viewed with an initial presumption of fairness.

### C.  The Parties' Settlement Resolves a *Bona Fide* Dispute

Here, it is apparent that the Parties' dispute is *bona fide* based on the hotly-contested litigation that has spanned several years. Plaintiffs maintain that Defendant misclassified them as exempt from the overtime requirements of the FLSA, which resulted in Defendant's failure to pay Plaintiffs an overtime premium rate for all hours worked over 40 each workweek. Defendant denies that Plaintiffs were misclassified and insists Plaintiffs were properly paid for all the work they performed. The Parties have engaged in contentious motion practice, including briefing Defendant's Motion for Judgement on the Pleadings. (Dkt. Nos. 20; 23; 26). The Parties have also spent significant time and effort on discovery for purposes of settlement, including exchanging documents relating to Defendant's liability and Plaintiffs' entitlement to damages as well as extensive damages calculations. Exhibit 2 at ¶ 11. Had the Parties not been able to negotiate a settlement, their many disagreements would have become *bona fide* factual and legal disputes for the Court to resolve in addition to any future disputes concerning motions for FLSA certification, decertification, summary judgment, pre-trial evidentiary disputes, and jury instructions.

Further, considering the representations and recitals in the proposed Settlement Agreement, the Parties' proposed settlement represents a reasonable compromise of disputed claims. Named Plaintiffs alleged that they were unlawfully denied overtime premium pay because they were incorrectly classified as exempt employees under the FLSA. *See* Complaint at ¶¶ 1, 3, 17, 21, 30,

34, 36-37, 42, 59-61, 70, 83 (Dkt. No. 1). As set forth in the Settlement Agreement, Defendant denies all liability, including that it violated the law in any manner alleged in the Complaint. *See* Exhibit 1 at ¶ 6. Accordingly, it is clear that the Parties' proposed Settlement Agreement represents a reasonable compromise of a *bona fide* dispute.

### D. The Parties' Settlement Represents A Fair And Reasonable Resolution Of Their Dispute

In determining the fairness of a proposed settlement, district courts in the Third Circuit consider the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see Atis v. Freedom Mortg. Corp.,* 2018 WL 5801544, at *3 (D.N.J. Nov. 6, 2018), citing *Girsh*. The nine *Girsh* factors to be considered include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157–58. This Court should approve the Parties' proposed settlement because, for the reasons discussed throughout this filing, all of the *Girsh* factors either weigh in favor of approval, or do not suggest the settlement is unfair.

#### 1. The settlement is fair, reasonable, and adequate in light of the complexity, expense, and likely duration of the litigation

The first *Girsh* factor requires consideration of "the probable costs, in both time and money, of continued litigation" with respect to the complexity of the action. *Yaeger v. Subaru of Am., Inc.*, No. 114CV4490JBSKMW, 2016 WL 4541861, at *9 (D.N.J. Aug. 31, 2016). The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation and the range of reasonableness of the settlement in light of the best possible recovery – including

11

the possibility that the lawsuit, if not settled, might not result in any recovery or might result in a recovery less favorable. Exhibit 2 at ¶ 17. It also accounted for the uncertain outcome and the risk of dispositive motion practice and trial, as well as the difficulties and delays inherent in such litigation and the likelihood of protracted appellate review. *Id.* Namely, the Parties were able to reach a settlement that will provide each of the Named Plaintiffs with more than the maximum amount of damages they could recover at trial. Thus, the complexity, expense, and likely duration of the litigation support a finding that the Parties' proposed settlement is fair, reasonable and adequate.

### 2. The settlement is fair, reasonable and adequate in light of the stage of the proceedings and the amount of discovery completed

The third[8] *Girsh* factor tests whether Plaintiffs had an adequate appreciation of the merits of the case before negotiating the proposed settlement. *In re General Motors Corp. Pick-Up Trucks Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 813 (3rd Cir. 1995). Throughout this litigation, Plaintiffs' counsel engaged in a thorough effort to identify key issues, collect, exchange, and evaluate discovery informing their litigation positions and their damages calculation, and investigated applicable laws regarding the alleged claims and defenses. Exhibit 2 at ¶¶ 11-12, 17. The settlement was the product of well-informed judgments about the adequacy of the resolution, made when litigation advanced to a stage that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id.* at ¶ 17.

### 3. The settlement is fair, reasonable and adequate in light of the risks of establishing liability and damages

The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the

---

[8] The settlement benefits only the two Named Plaintiffs, so the second *Girsh* factor (*i.e.,* reaction of the class) does not apply. Nevertheless, the Named Plaintiffs approve of the settlement.

12

benefits of an immediate settlement." *Yaeger*, 2016 WL 4541861, at *10 (citation omitted). As at least one court has observed, a "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Here, Named Plaintiffs believe they have a strong case that Defendant misclassified them and, as a result, failed to pay them overtime premium pay for the overtime work they performed with Defendant's alleged knowledge. As a result, Plaintiffs are confident that the legal claims at the heart of their lawsuit would have survived summary judgment and they would have prevailed at trial. However, Defendant contends that Named Plaintiffs are exempt under the FLSA pursuit to the retail sales exemption. During the Parties' settlement negotiations, taking into consideration the time and pay data as well as information relating to Defendant's liability and Plaintiffs' entitlement to damages, Plaintiffs and Plaintiffs' counsel considered all factors involved and believed it is in their best interest to settle solely for the two Named Plaintiffs. Exhibit 2 at ¶ 17. Based on the limited timeframe each Plaintiff worked as a Designer and taking the statute of limitations into consideration, the amounts paid to each Plaintiff are more than reasonable and fair and actually exceed the amounts that would have been awarded if they were successful at trial.

Because of the disparity between their litigation positions, both Parties would have faced substantial risk and uncertainty if this litigation had continued, including the significant expense associated with prosecuting and defending these claims, and any appeals, and the disruption to their lives and business. Accordingly, without conceding any adverse conclusions would be correct or appropriate, both Parties believe that the settlement is in their best interests. This situation demonstrates that the Parties' proposed settlement is fair, reasonable and adequate in light of the material risks associated with continued litigation.

      **4.**      **The settlement is fair, reasonable and adequate in light of the risks Plaintiffs would face in maintaining the class action through trial**

The sixth *Girsh* factor requires the court to consider the risks of maintaining the class action through trial, including the likelihood of obtaining and maintaining class certification. *Gomes v. Extra Space Storage, Inc.*, No. 213CV929KSHCLW, 2017 WL 2999020, at *3 (D.N.J. July 13, 2017). Plaintiffs have entered into this Settlement Agreement cognizant of the risks of establishing liability and damages and maintaining this case on a collective basis through trial. Defendant's records cast some doubt as to whether Plaintiffs were improperly compensated. Also, the issue of whether Plaintiffs were exempt under the retail sales exemption is a hotly-contested issue that would require significant additional discovery, time, expense, and motion practice. Under these circumstances, this *Girsh* factor supports approval of the proposed settlement.

      **5.**      **The settlement is fair, reasonable and adequate in light of Defendant's inability to withstand a greater judgment**

The seventh *Girsh* factor takes into consideration Defendant's ability to withstand a greater judgment. As noted above, due to unforeseen economic and supply chain issues, Defendant became insolvent and ceased operations on January 17, 2020. The bank seized all assets pursuant to a secured loan agreement Defendant entered into on March 28, 2017. Despite limited assets to fund the settlement, the Parties continued, over the course of several months, to discuss ways to resolve this matter as outlined in their Settlement Agreement and were ultimately successful in doing so. Thus, this factor supports approval of the settlement.

      **6.**      **The settlement is fair, reasonable and adequate in light of the best possible recovery and the attendant risks of further litigation**

Finally, the eighth and ninth *Girsh* factors examine whether a proposed settlement is fair in light of the best possible recovery and the attendant risks of continued litigation. Plaintiffs allege that they worked between 45 and 60 hours per workweek but were improperly classified as exempt

employees and deprived of overtime premium compensation. *See* Complaint at ¶¶ 1, 3, 9-10, 17, 21, 30, 34, 36-37, 42, 59-61, 70, 83 (Dkt. No. 1). This settlement has the full support of the Named Plaintiffs and was reached after an in-depth analysis of the strengths, weaknesses and risks inherent to the Parties' respective positions. Plaintiffs have entered into the Settlement Agreement cognizant of the risks of establishing liability and damages and maintaining this case on a collective basis through trial. Defendant has entered into the Settlement Agreement cognizant of the risks that it may be found liable for Plaintiffs' alleged violations, the possibility that this case may proceed to trial on a collective basis, and that it may be held responsible for paying Plaintiffs' damages. The Parties' Settlement Agreement – providing the Named Plaintiffs with more than the maximum amount of damages they could recover at trial – is reasonable in light of the best possible recovery with consideration for all the attendant risks of litigation.

### E.  The Parties' Settlement Furthers the FLSA's Implementation in the Workplace

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." *Lynn's Food Stores, Inc*., 679 F.2d at 1352. Judicial approval of a settlement is necessary in order to ensure that the compromise "furthers implementation of the FLSA in the workplace." *Brumley*, 2012 WL 1019337, *4. In the FLSA context, "district courts have rejected as unreasonable settlement agreements that contain confidentiality provisions, finding them unenforceable and operating in contravention [to] the FLSA." *Id.* at *7.

Here, the Parties did not include a confidentiality clause in the Settlement Agreement. Therefore, the "public-private character" of employee rights under the FLSA is preserved, and the Settlement Agreement allows for the public to assure that employee wages are fair by virtue of public knowledge of the settlement. *Id.* at *1. Further, the Settlement release clause is not impermissibly

broad, but rather, is properly tailored to achieve a fair compromise for both Parties. *See* Exhibit 1 at ¶

5. The Settlement Agreement provides that Plaintiffs release their claims from:

> [A]ny and all actual or potential claims, demands, actions, causes or action or liabilities, whether known or unknown, in law or equity, whether statutory or common law, or otherwise related to Plaintiffs' wages and hours during his/her employment with Solid Wood or any agreement concerning wages or hours during such employment, which Plaintiffs ever had, now have, or could have, from the beginning of the world to the date of the respective Plaintiff's execution of this Settlement Agreement, including any and all wage and hour claims, any claims for unpaid wages or overtime pursuant to the FLSA or NJWHL, any claims for failure to pay off-the-clock work, and/or any claims that were or could have been asserted in the Lawsuit, including back pay, front pay, liquidated, compensatory, and punitive damages.

*Id.* at ¶ 5. The Parties' release permissibly limits the scope of waiver and release provisions to claims

so that "[n]othing in this Settlement Agreement shall constitute a waiver of any rights to enforce the

terms of this Settlement Agreement or waiver of claims that cannot be legally waived or of claims that

arise after the date this Settlement Agreement is executed." *See Singleton v. First Student Management,*

*LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014) (finding waiver

language "broad" yet "appropriate"). Accordingly, the release of claims is legitimately limited to

further the implementation of the FLSA, and merits this Court's approval.

## V.     CONCLUSION

    For the reasons set forth above, and in all of the related papers submitted with this filing, the

Parties respectfully submit that the Court should grant the instant Motion and enter their proposed Final

Settlement Approval Order (Exhibit 3) approving their proposed settlement.


                                     Respectfully submitted,


Dated: January 15, 2021              By: */s/ David J. Cohen*
                                         David J. Cohen

STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836

James B. Zouras
Ryan F. Stephan
Andrew C. Ficzko
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
(312) 233-1550

*Plaintiffs' Counsel*


*/s/ Jacqueline K. Gallagher*
Jacqueline K. Gallagher

BUCHANAN INGERSOLL & ROONEY, PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
(215) 665-8700

*Defendant's Counsel*

17

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on January 15, 2021, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

<u>*/s/ David J. Cohen*</u>